Estate of Hettie M. Stroh, Deceased, Gari M. Stroh and John M. Stroh, Administrators v. Commissioner.
Estate of Stroh v. Commissioner
Docket No. 109060.
United States Tax Court
1943 Tax Ct. Memo LEXIS 504; 1 T.C.M. (CCH) 453; T.C.M. (RIA) 43031; January 19, 1943
*504 Thomas G. Long, Esq., 1881 Nat'l Bank Bldg., Detroit, Mich., Fred J. Kennedy, Esq., 1881 Nat'l Bank Bldg., Detroit, Mich., and H. A. Mihills, C.P.A., 917 Munsey Bldg., Washington, D.C., for the petitioners. DeWitt M. Evans, Esq., and Paul C. Sebastian, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: Respondent determined a deficiency in estate tax in the amount of $90,649.21. The sole issue is the value of 1,400 shares of common stock of the Stroh Brewery Company as of January 5, 1939, the date of the decedent's death. Respondent determined that the stock had a value of $620.40 on that date. Most of the facts have been stipulated. Three witnesses testified as experts for petitioners and one for the respondent as to the value of the stock on the basic date. Findings of Fact The decedent, Hettie M. Stroh, died intestate on January 5, 1939. Petitioners are the duly appointed and qualified administrators of her estate, and are residents of Grosse Points Farms, Michigan. The Federal estate tax return for the estate was filed with the collector of internal revenue for the Michigan district. The tax in controversy is federal estate tax and the *505 deficiency asserted by the respondent is $90,649.21. The notice of deficiency was mailed to the petitioners on August 11, 1941. On January 5, 1939, the date of her death, Hettie M. Stroh owned 1,400 shares of common stock of The Stroh Brewery Company, Detroit, Michigan. This stock was included in the federal estate tax return for the Estate of Hettie M. Stroh at a value of $534,184.00, or a per share value of $381.56 a share. The respondent had increased the gross estate in the amount of $334,376.00 by reason of inclusion of said 1,400 shares of common stock of The Stroh Brewery Company, Detroit, Michigan, in the estate at a value of $868,560.00, or a per share value of $620.40 a share. The Stroh Brewery Company, an Arizona corporation with its principal office and place of business in Detroit, Michigan, is engaged in the manufacture and sale of beer. On January 5, 1939 the authorized capital of The Stroh Brewery Company consisted of 5,000 shares of 6% preferred stock of a par value of $100.00 per share, and redeemable at $105.00 per share, of which 2,500 shares were outstanding on that date, and of 50,000 shares of common stock of a par value of $100.00 per share, of which 18,266 *506 1/2 shares were outstanding on that date. The business of The Stroh Brewery Company was founded by Bernhard Stroh in the year 1850 and was incorporated in 1875 as the Lion Brewing Company. In 1883 it was purchased by Bernhard Stroh, Jr., and Julius Stroh and in 1885 was reincorporated as the B. Stroh Brewery Company. In 1902 it was reincorporated under the laws of West Virginia as The Stroh Brewery Company. On February 23, 1909 the company was again reincorporated under the laws of Arizona as The Stroh Brewery Company, which company was continued and is the present The Stroh Brewery Company. In 1918 the name of the company was changed to The Stroh Products Company and in 1936 it was changed back again to The Stroh Brewery Company. The business was founded as a lager beer brewery and continued as such until the adoption of prohibition by the state of Michigan, which became effective on May 1, 1918 and on which date the lager beer business of The Stroh Brewery Company ceased. National prohibition became effective on January 29, 1920. Prior to May 1, 1918 The Stroh Brewery Company also manufactured and sold ice and some near beer. After May 1, 1918 it continued to sell ice and sold *507 near beer in an increasing volume for a few years and then sales decreased to a volume that was not very substantial. After May 1, 1918 the company became engaged in the manufacture and sale of soft drinks, malt products, and ice cream. With the advent of legalized beer in 1933 and the repeal of the prohibition amendment to the Constitution of the United StatesThe Stroh Products Company ceased the manufacture and sale of soft drinks and malt products and in 1934 discontinued the manufacture and sale of ice. The company has continued and is still engaged in the ice cream business. Throughout the period of prohibition substantial portions of the equipment for making beer were maintained in condition such as to be readily adaptable to again engaging in the manufacture of beer. In 1933 when the sale of 3.2 beer was legalized The Stroh Products Company started to manufacture and sell such beer and upon the repeal of the prohibition amendment began to manufacture and sell full strength beer. On November 7, 1933 The Stroh Brewery Company was organized under the laws of Michigan as a wholly owned subsidiary of The Stroh Products Company for the purpose of meeting the requirements of a bank *508 in obtaining a loan which was required for the business purposes of the Company. There was transferred to the subsidiary all of the assets of The Stroh Products Company which were used in connection with the manufacture and sale of beer, ice, and ice cream. Thereafter The Stroh Products Company held all of the stock of The Stroh Brewery Company together with various parcels of real estate not used in the manufacturing and selling operations including the land and building known as the "Stroh Building" which had been erected in 1921 at a cost of approximately $2,500,000.00 and which has resulted in substantial losses since its erection. Under date of August 31, 1936, The Stroh Brewery Company was liquidated and it transferred all of its assets subject to its liabilities to The Stroh Products Company in complete cancellation and redemption of all of its stock. At the same time the name of The Stroh Products Company was changed to The Stroh Brewery Company. At January 5, 1939 the outstanding preferred and common stock of The Stroh Brewery Company was registered in the following names: PREFERRED STOCK
Julius Stroh
2,500 shares
COMMON STOCK
Julius Stroh
2,116 1/2 shares
Gari M. Stroh - son of Julius Stroh
3,803 1/2 shares
John W. Stroh - son of Julius Stroh
3,803 1/2 shares
Hettie M. Stroh - wife of Julius Stroh
1,400 shares
Marie S. Blue - daughter of Julius Stroh
1,800 shares
Marguerite Stroh - daughter of Julius Stroh
1,800 shares
Florence Stroh - daughter of Julius Stroh
1,800 shares
Nellie Shannon - sister of Julius Stroh
368 1/2 shares
Grace Muriel Johnston Family Trust
125 shares
C. F. Raiss - Vice President and Treasurer of The Stroh Brewery Company
228 1/2 shares
Harold M. Raiss - son of C. F. Raiss
200 shares
Herman A. Rosenbusch - Superintendent and Director of The Stroh Brewery
Company
668 1/2 shares
Naomi R. Comerford - daughter of C. F. Raiss
100 shares
Joseph Borneman - Auditor of The Stroh Brewery Company
52 1/2 shares
*509 Since the incorporation of The Stroh Brewery Company in 1909, the majority, approximately 93 percent of the preferred and common stocks of the company have been held by members of the Stroh family. Neither the preferred nor common stocks of The Stroh Brewery Company at any time herein mentioned were or now are listed upon any stock exchange. A copy of the balance sheet of The Stroh Brewery Company at December 31, 1938, is as follows: ASSETS
Current assets: Cash on hand and on deposit
$ 866,554.48
Marketable securities
1,087,418.74
Accounts receivable less reserve for doubtful
35,518.53
Inventories, including Federal and State tax stamps
926,387.79
$2,315,879.54
Other assets: Officers' and employees' accounts
$ 96,262.90
Land contracts and mortgages receivable
57,362.99
Miscellaneous
22,926.20
176,552.09
Allowance for
Cost
Depreciation
Net
Property, plant and equipment: Plant land
$ 75,695.31 $ $ 75,695.31
Plant buildings
1,881,588.51
755,591.01
1,125,997.50
Machinery and equipment
1,483,236.61
322,435.95
1,160,800.66
Office equipment
23,861.22
6,453.95
17,407.27
Automobiles and trucks
187,878.62
134,000.80
53,877.82
Ice cream cabinets, cans, and trucks
53,202.33
37,147.81
16,054.52
Cartons
77,171.41
57,267.68
19,903.73- A
Cooperage
147,110.72
75,776.07
71,334.65
Bottles
160,776.70- A
2,701,848.16
Branch land, buildings and equipment
24,477.72
10,514.42
13,963.30
Property held for expansion
242,249.00
2,537.50
239,711.50
Stroh Building and land
2,765,697.91
772,638.81
1,993,059.10
W. Elizabeth St. property
200,000.00
51,897.00
148,103.00
Other outside property
117,909.34
96,489.91
21,419.43
2,416,256.33
Deferred charges
8,825.73
$7,619,361.85
*510 LIABILITIES
Accounts payable, accrued expenses, customers' deposits, etc.
$ 563,699.98
Reserves: For commitment losses
$ 37,190.19
For fluctuation in market value of securities
17,964.07
55,154.26
Deferred income from sale of real estate
26,030.49
Capital stock outstanding: Preferred stock ($100.00 par value)
$ 250,000.00
Common stock ($100.00 par value)
1,826,650.00
Earned surplus
4,897,827.12
6,974,477.12
$7,619,361.85
At December 31, 1938, The Stroh Brewery Company carried its investment in the office building known as the "Stroh Building" on its books at cost less accrued depreciation in the net amount of $1,993,301.93. The fair value of the "Stroh Building" at December 31, 1938, was not in excess of $500,000. At December 31, 1938, the fair value of the "current assets" and "other assets" of The Stroh Brewery Company were the values as carried on its books and as shown in its balance sheet at that date. The "property, plant and equipment" is shown in petitioner's balance sheet at cost less accrued depreciation as approved by respondent, *511 and other than the "Stroh Building", represents the fair value of said property, plant and equipment for use in the brewery business. The net earnings of The Stroh Brewery Company, including the net earnings of its wholly owned subsidiary for the period of its existence from November 7, 1933, to August 31, 1936, after deduction of dividends applicable to preferred stock, for the calendar years 1913 to 1940, inclusive, were as follows: Year
Amount
1913
$ 430,194.69
1914
236,537.27
1915
339,147.23
1916
377,487.66
1917
504,191.88
1918
254,550.05
1919
272,974.41
1920
196,548.73
1921
187,427.85
1922
109,308.13
1923
170,173.44
1924
122,842.80
1925
222,299.14
1926
51,531.81
1927
(31,457.33)
1928
(171,995.43)
1929
(1,204.94)
1930
(113,764.41)
1931
(185,430.50)
1932
(200,522.39)
1933
109,084.02
1934
1,043,909.73
1935
1,573,167.60
1936
2,423,022.84
1937
1,559,728.58
1938
961,361.20
1939
1,157,932.25
1940
984,178.34
The net loss from the operation of the "Stroh Building" for the years 1933 to 1940, inclusive, was as follows: Year
Amount
1933
$72,375.51
1934
70,118.66
1935
53,550.59
1936
38,883.48
1937
87,920.73
1938
80,425.84
1939
36,223.74
1940
19,870.36
*512 The cash dividends paid on the common stock of The Stroh Brewery Company for the calendar years 1913 to 1940, inclusive, and the rate per share were as follows: Cash Dividends
Rate Per
Paid On
Common
Year
Common Stock
Share
1913
37,284.00
4.00
1914
37,284.00
4.00
1915
51,265.50
5.50
1916
97,870.50
10.50
1917
93,260.00
10.00
1918
354,594.97
70.00
1919
101,360.00
20.00
1920
50,680.00
10.00
1921 to 1933,
inclusive
1934
53,214.00
3.00
1935
213,456.00
12.00
1936
800,460.00
45.00
1937
821,992.50
45.00
1938
821,992.50
45.00
1939
821,992.50
45.00
1940
730,660.00
40.00
The volume of beer sold, expressed in barrels, the gross sales of beer, the gross sales of ice cream and other sales, and the total gross sales of The Stroh Brewery Company, including such data with respect to its wholly owned subsidiary prior to its liquidation on August 31, 1936, for the calendar years 1934 to 1940, inclusive, were as follows: Gross Beer Sales
Ice Cream and
Total
Bbls.
Amount
Other Sales
Gross Sales
1934
422,916
$ 6,651,153.28
$259,687.31
$ 6,910,740.59
1935
581,715
9,384,224.98
271,727.03
9,655,952.01
1936
734,617
12,316,957.80
339,488.64
12,656,446.44
1937
701,658
11,814,214.62
461,982.48
12,276,197.10
1938
558,017
9,211,746.03
405,845.14
9,617,591.17
1939
534,917
8,849,836.85
395,318.33
9,245,155.18
1940
495,079
8,370,489.90
367,415.70
8,737,905.60
*513 The fair market value of the common stock of the Stroh Brewery Company on January 5, 1939 was $465 per share. Opinion The finding which has been made, that the value of the 1,400 shares of common stock of the Stroh Brewery Company on the date of the death of the decedent was $465 per share, disposes of the only issue. It is difficult, if not impossible, to rationalize a fact question such as the present or to point out all of the factors which have been taken into consideration in resolving it. Some general observations, however, may not be amiss. The common stock of the Stroh Brewery Company was not listed on any stock exchange. It was closely held and approximately 93 per cent was owned by members of the Stroh family. No sales were made at or near the basic date. It has been necessary, therefore, to resort to other methods of determining value, such as consideration of the value of the assets, earnings, dividend record, financial condition, future prospects and the testimony of witnesses called by the parties as experts. At the time of the decedent's death the Stroh Brewery Company was the largest brewery in Detroit and the State of Michigan. It continued operation through *514 the prohibition years, when it manufactured soft drinks, ice and ice cream. It resumed the production of beer in 1934, and ever since has enjoyed a profitable existence. Its balance sheet shows a sound financial condition. Its earned surplus as of December 31, 1938, was approximately $3,400,000. With substantial portions of its beer-making equipment ready to begin operation, the Stroh Brewery commenced the manufacture and sale of beer immediately following repeal of the 18th Amendment. Its three best years were 1935, 1936, and 1937. Its earnings increased from $1,043,909.73 in 1934, to $1,573,167.60 in 1935, and to $2,423,022.84 in 1936. They declined to $1,559,728.58 in 1937, and $961,351.20 in 1938. The decline appears to have been due in part to the fact that in 1937 retailers of beer raised the price of Michigan-made beer to 15 cents per bottle, which was the price at which nationally advertised brands made outside of Michigan were selling in that state. This resulted in a decrease in the consumption of local beer and an increase in the proportion of out-of-state nationally advertised beer consumed in the state of Michigan. It also resulted in reducing the quantity of bottled *515 beer sold by the company, which is a more profitable line than barreled beer. Since 1936 the percentage of beer sold by the Stroh Brewery in Michigan has steadily decreased, and the evidence indicates it is quite unlikely that the large earnings of 1935, 1936 and 1937 will be repeated in the future. The dividend records of the company have been set forth in our findings. Although it pursued a conservative policy in connection with the distribution of dividends, dividends of $45 per share were paid on its common stock in 1936, 1937 and 1938. No dividends, however, were paid on the stock owned by the decedent during the prohibition years 1921 to 1933, inclusive. The 1,400 shares of common stock owned by the decedent gave her, or an outside purchaser of it, merely a minority interest. This factor was alluded to by the witnesses and is discussed at some length by the parties upon brief. Petitioner argues that it greatly decreases the fair market value since a prospective purchaser, who might otherwise purchase it, would be deterred from doing so because he would be at the mercy, more or less, of the owners of the majority. Respondent argues that "it would appear more reasonable to assume *516 that the investing public would snap at an opportunity to buy stock in the company and travel along with the Stroh family, even to the extent of paying a premium, in view of their reputation for financial success and integrity." They also differ sharply, as do the witnesses called by them, as to the effect of the substantial fluctuation in earnings, especially for 1936. Petitioners argue that this year was so abnormal it should be wholly disregarded and point to the earnings for the year 1938 as being far better evidence of real value. Respondent insists that the mathematical average for the five years is the best criterion. All of this argument, together with the facts upon which it is based, has been carefully considered. The precise effect cannot be stated. We have received substantial aid in determining the fair market value of the stock from the testimony of the witnesses called by the parties as experts. All of them possessed the necessary qualifications to express opinions as to the value of the stock on January 5, 1939, and did so. The opinions given by the three called by petitioners were $381.46, $382.50, and $365 per share. Respondent's witness placed it at $545 per share. *517 All agreed that the business of the Stroh Brewery Company was of a hazardous nature, and even respondent's witness testified that in his business of investment counseling the purchase of brewery stock had never been recommended. The basic facts were all before the witnesses and the difference in the opinions resulted largely from the methods adopted in determining the values and to divergent views on the future probable earnings of the company. No useful purpose would be served by attempting to state the general principles applied in arriving at our determination. See James Couzens, 11 B.T.A. 1040; Estate of Daniel Guggenheim, 39 B.T.A. 251, and cases therein cited. Valuation of stock such as that owned by this decedent is necessarily "an approximation derived from the evaluation of elements not easily measured." Helvering v. Safe Deposit & Trust Co. of Baltimore, 316 U.S. 56, 86 L. Ed. 1266, 62 S. Ct. 925. Judgment will be entered under Rule 50. Footnotes
A. Includes cartons and bottles in the total amount of $151,716.80 which are the property of customers.↩